I'm going to focus my time on the question of inevitable discovery. I'm going to ask the court to agree with the district court's finding that there was a Fourth Amendment violation of Mr. Peterson's backpack, but reverse the order denying the suppression motion on the grounds that the government has failed to prove inevitable discovery. So the question of inevitable discovery, the government bears the burden of proving that by a preponderance of the evidence. And what's important to keep in mind, and this is the key, inevitable discovery involves no speculative elements, but focuses on demonstrated historical facts capable of verification. Established facts capable of verification. And the court took, it took the court, the district court, three evidentiary hearings to decide the suppression issue. And what's also important to keep in mind, by the way, is that the inevitable discovery assessment is based on the circumstances that preceded the search. Well, counsel, correct me if I misunderstand, but I thought the first two hearings primarily focused on the reason for which your client was arrested in the first place and did not focus on his conduct in breaking away a couple of times and kicking in the window of the police car. If I understood it correctly, the court essentially agreed with you that the inevitable discovery rule would not apply in connection with the backpack based on the original arrest, but rather that the officer later testified that had they not had this initial basis for going forward, he would have put into, they would have charged him basically with all of the things that he did in the police car, the damage that he caused. The running way, all that sort of thing. And that would have not been subject to the bail issue that you raised. And they would have indeed discovered this when they inventoried the backpack. Do I misunderstand something? In part, you do. And let's walk through these three hearings, because you're correct in the sense that the first hearing focused on the circumstances of the arrest as well as the search of the backpack. And at that first hearing, the government's inevitable discovery argument relied on Mr. Peterson was inevitably going to be booked into custody for the outstanding warrants. But they offered no policy or evidence to show that Mr. Peterson's backpack was going to be actually inventoried because the jail has a policy of refusing backpacks. So the judge asked us all to come back for a second hearing. And at the second hearing, that's when the government produced, introduced the policies regarding searching the backpacks and inventorying the backpacks. But at that point, it became clear that it was not inevitable that Mr. Peterson would be booked into custody for the warrants based on that RCW. Just help me understand. If I understand correctly, the government is not even arguing on appeal that the inevitable discovery would have applied in connection with the arrest for the original misdemeanors or whatever it was, but rather on this second point. And if that's correct, we probably don't even need to argue about the other. You win on that. Your client was not told he had a chance for bail. If he had a chance for bail, there would have been no inevitable discovery. So that's kind of a done deal. The question is, after that, and the officer testified, the court believed him, it was not refuted, and that's where the inevitable discovery rule applies. So will you address that and help us with that? So that gets to the third hearing. And at this third hearing, that's when the judge, because during the first two hearings, there was no testimony whatsoever that but for the finding of the firearm and but for the warrants, Mr. Peterson inevitably was going to be booked on resisting arrest. So what the judge did is said, hey, wait a minute, we don't have any of that stuff. It looks like there's no inevitability that Mr. Peterson is going to be booked for the warrants. Come back, bring this deputy back into court so he can testify about what he would have done with respect to the resisting arrest. Basically spoon-fed the government this idea that, wait a minute, in retrospect, in hindsight, we could have arrested Mr. Peterson on the warrants. So we have the third hearing, but the testimony from the deputy is still ambiguous and unclear about whether that inevitably would have happened. So let's go through this. It's not ambiguous as to whether he would, in fact, have charged your client with the resisting arrest. He said he absolutely would have. But that doesn't matter for inevitable discovery for purposes of searching the backpack. Right. Inventory booking requires inevitable booking. Right. So he would have been booked on the charges, whether he would have been booked into custody. That's another matter. Right. But he definitely would have been charged. And that requires a booking process. You get your fingerprints taken, your photo taken, that kind of stuff. Right. That happens at the jail. And I read the King County policy as saying when the jail, the sheriff's office policy, when the jail won't take the stuff because they don't they won't store the backpack and the like, that the items will be inspected before the booking process even commences. So why wouldn't that mean that had he been charged with these offenses and taken to the jail? Inevitably, the officers would eventually have had to look through the backpack. All right. So I'll answer that question the following way. So keep it in mind, inevitable discovery requires no speculative elements with the testimony. So let's go through the testimony. And the key transcripts that I would ask the panel to focus on would be at SCR 95, 96, SCR 104, and 105, because that's where this occurs. So the first question that the prosecutor asked about the resisting arrest was by way of a leading question, whether the deputy could have booked Mr. Peterson on the resisting arrest. And the answer was yes. But that's a could have answer. Yeah. But, you know, you know quite well later on redirect, he was asked maybe a better question. And he said, absolutely, I would have. There's no ambiguity as to the whether he would in fact would have booked your client on the resisting charges. If we look at the testimony clearly, it's he absolutely would have gone through the booking procedure. But keep in mind what he had just testified to. He had just testified previously in that same hearing that Mr. Peterson was going to go nowhere. He had over $100,000 in warrants. So in the officer's mind, Mr. Peterson, of course, was going to absolutely go through the booking procedure because he had over $100,000 in warrants. The deputy is being asked about what would you have done with respect to these new charges, not the warrants that were already outstanding, but rather what offense your client had committed right in the officer's presence. That's what he's being asked about, isn't he? And there's no answer. So if we go to SCR 105, the question is this. And he would have been booked on those charges. No answer. He might not have been charged right away, but he would have gone through the booking procedure. Absolutely. And that's my focus here, is that the testimony from the officers is that, of course, Mr. Peterson was going to go through the booking procedure because he had over $100,000 in warrants. Just look at the bottom of SCR 104. Is that where you're looking? Top of 105. Bottom of 104. Had you not found a gun that day, would you have referred charges for the misdemeanor crimes of obstructing or resisting arrest? Absolutely. Then on the top, he says, and he would have been booked on those charges. He might not have been charged right away, but he would have gone through the booking procedure. Absolutely. So I don't see what's ambiguous about that. What's ambiguous is that he never mentions anything or doesn't answer anything with respect to booking on the charges. He would have referred the charges. He absolutely would have referred charges, but nothing about booking on those charges. And, in fact, Your Honor, if we go back to what he testified earlier, he said that, of course, we wouldn't book on those charges because they're misdemeanors. In other words, in hindsight, looking back at what you ---- Wait, wait, wait, wait. Where did he say that? Okay. So if we go to SCR ---- But he didn't book on the charges because they were misdemeanors? Yes. I don't remember that. Okay. So SCR 96. Right. Okay. And if we go to the question that the prosecutor asked, in this case, you didn't book him, Mr. Peterson, on obstructing or resisting. Why is that? Because those are misdemeanor offenses. They never had any intention at all at any point. Well, that was at the beginning, as my colleague suggested. When they first went in there, they went on the more complete, more serious charge because of all these claims against him. But when that didn't provide what they needed, they went back and said, yeah, we would have booked him. Is there something wrong with that? There is because that does not rely on historical facts. That doesn't rely on demonstrative facts. For example, this would be a totally different case if the police reports that were admitted as exhibits and the super form that was also admitted as an exhibit charged resisting arrest because that would have shown the state of mind of the officers, the deputies, that, you know what, regardless of whatever happens, this guy is going to definitely be booked into jail for resisting arrest, even though we have authority to cite and release and we don't have to book because typically we don't book on misdemeanors. I think you're misreading that portion of the testimony because what he's being asked in that context is, hey, you booked him on this felony gun charge, right? Why didn't you also book him on the misdemeanor obstructing and resisting charges? And he says, well, when we got mixed charges, more serious felony on the misdemeanors, we just charge on the felony. That's all he's saying. So when you're asked in hindsight what you would have done in the past if you had to do it all over again, that's the problem with finding, basing that testimony on another. But he's not saying that if we didn't have the felony charge and all we had were the misdemeanor charges, we wouldn't have booked him at all. That's not what he's saying in that passage you just referred to. He's saying that what he's being asked is that you booked him on the felony gun charge. Why did you do that and why didn't you also book him on the misdemeanor charges? Because, you know, obviously you saw him resisting and obstructing. And he says when we got the two kinds of charges, we booked on the more serious felony charge. That's not saying what you're claiming. That's all I'm pointing out. Okay, and I think if we're going to rely on that, then what we're doing is then we are relying on speculative conjecture. So does your argument boil down to that no reasonable judge could have accepted Deputy Belogna's testimony, that he absolutely would have booked Peterson on obstructing and resisting arrest had he not discovered the handgun? Absolutely, because that notion was fed into Deputy Belongi after he had two opportunities to explain that. After the historical facts and the record of the exhibit show that there was never any intention to book Mr. Peterson on resisting, that there was never any established facts to corroborate that. And what we have here is just simply saying in hindsight, you know, because there's probable cause to arrest him for resisting arrest, come to think of it, yeah, I would have booked him on that. But that's not what he's saying. So what you're asking us to do is review the transcripts and find that the judge was wrong in his facts, finding that they would have gone ahead and booked him on the obstructing and resisting arrest charges. Two points to answer that question. Number one is I believe that the judge misunderstood the testimony. Because if we read the testimony as I read it, absolutely refer to absolutely going through the booking process, not absolutely booking Mr. Peterson on resisting arrest. Number two, if we are to believe that the judge interpreted that testimony as absolutely going through the booking process, it relies on conjecture. It relies on speculative testimony. That's not permitted for purposes of the inevitable discovery analysis under Nix and Lang. And then finally, since I'm pretty much out of time. Far out of time. Okay. Let me ask my colleague, Peter, if you have any additional questions. So you are out of time, counsel, so we appreciate your argument. Thank you very much. Thank you. We'll now hear from the government. Good morning. Good morning. May it please the court, Charlene Kosky for the United States. Appellant's argument regarding inevitable discovery depends on his position that the detective was not telling the truth when he testified. The district court found that testimony credible and that finding is due substantial deference. The court did not commit clear error when it found the government showed by a preponderance of evidence that the inevitable discovery doctrine applied. Though the government does maintain that the search that occurred was a lawful search of Mr. Peterson's person, it's not necessary to reach that issue because the inevitable discovery doctrine applies in this situation. How do we know that even if he had been charged, let's say, with obstructing and resisting, how do we know that the backpack, in fact, would have been searched, given that the jail's policy is to basically say we just don't deal with this kind of personal property? The jail's policy is that we don't deal with this, but the King County Sheriff's policy was that the jail gives it to them and then they search it, and the testimony from representatives from both the jail and the sheriff's office came in and testified that if someone was brought in and had been booked, what would have happened is that the backpack would have gone to the sheriff's office and the sheriff's office would have searched it as part of their normal booking procedure, and the district court credited that testimony. But only if the person is actually booked into custody? In other words, because that's the question that arose on the warrants issue is that maybe, and he had a declaration from someone saying, no, I would have posted, what was it, $100,000? $135,000. Cash. That day, instantaneously. But if credited, wouldn't that suggest that even if he had been booked on the resisting and obstructing charges, which I suspect don't have a bail as high as $100,000? I believe the testimony was $7,500. Right. So he would have easily been able to make that, according to that declaration. That day, immediately, he wouldn't have had to go into custody. Do we have something that says nonetheless the backpack still would have been searched? Yes. Actually, in the testimony, and I don't know that I have the precise SER number marked for that testimony, but the testimony was that he would have been booked and he would have been there and he would have gone through a hearing the next day. So he would have been held for some period of time until he'd go through his hearing, and then there was testimony that the amount set probably would have been out at $7,500. I assume that the bail was something less than $100,000. So if he's there at the station, they're booking him on this misdemeanor obstructing charge, couldn't he just say, look, I've got someone who's going to be here in five minutes with $10,000 in cash? No, because the bail amount hadn't been set yet. So he would have been taken into custody until he had his hearing, and then the bail would have been set. And then at that point, if he could post his bail, he could have done that. But he would have been held for that period of time until he actually had the hearing on the new charges. Where is that testimony in the record? Let's see. I actually don't know that I have that SER marked. Do you know who would have given that testimony? I think it was one of the jail or sheriff's office witnesses. This is King County, right? Yeah. Isn't there like a bail schedule where the people can just look and say, OK, this charge $7,500. I don't know that. So there wouldn't have been a need to go for a hearing the next day? I'm not sure. There is testimony in the record that there would have been a hearing. I don't know exactly where it is in the record. I'm sorry for that. I am not familiar with whether they have a publicly available schedule. But the testimony was that he would have been held for some period of time until he had a hearing to determine how much his bail amount would be on those new charges. Counsel, can I switch your focus to the sentence as opposed to the inevitable discovery issue? Yes. You're familiar with our recent case of Edling. I am. Isn't that a deep six part of the sentence here? I don't think it does. I think that Washington robbery is different. Why? The statute is different because of the way Washington State Supreme Court has interpreted it and applied it. In those other cases, in Nevada's case, it's one thing to look at the plain language of the text without anything else underneath it and find that there's some… Isn't that what we do in a Taylor analysis? Except that in this case, it's to look to see if there's a reasonable probability that there would actually be a case based on fear of property alone. And in these other cases like Nevada, you just have this plain text and there's a dearth of case law actually enforcing it that way. And this court has said, well, okay, but the text is enough. In Washington's case, you have the text, which is the same as the Nevada robbery statute. But you also have State Supreme Court case saying it requires bodily harm. That, coupled with the fact that there's no evidence… What case do we have that says that? Witherspoon, and it's cited in the 28J. That case does not say that. It's talking about a case in which obviously the only type of fear at issue was of bodily harm. So you need a case, it seems to me, in the face of the text of a statute this plain. You need a case from the Washington Supreme Court saying notwithstanding the fact that our legislature has authorized a robbery charge based on fear of property alone, that's not in reality what the crime really requires. And instead it always requires, no matter what, putting someone in fear of bodily harm. And that case most definitely that you gave us in the 28J letter does not say that. But it doesn't say that it doesn't, right? It doesn't say that this… Right. And that's what you need. That's what I'm saying. We have a statute that says as plain as day that instilling fear of harm to property alone is sufficient for a robbery charge. So in the face of that, it seems to me you as the government, if you want us to say the statute means something else, you've got to have a case that says basically we're going to override the plain language of the statute and say it always requires fear of bodily harm. And that case you gave us doesn't say that. So I would say to that that the plain text, you have a State Supreme Court. It does not say that it doesn't do the negative, right? It's true that it only looks at fiscal because there are no cases in Washington law that I'm aware of or the defendant has cited where it includes just mere… But isn't that fatal to your situation? I don't think so. Because under Taylor analysis, you look at apples and apples. And in this case, you have a virtually identical statute to one that in Edling we said doesn't make it. Well, in this case, but we're looking for a reasonable… It has to be reasonably probable. That's not what we look for. Under Duenas-Alvarez? We don't look for that. We determine under the Taylor analysis whether it meets the categorical analysis. If it doesn't and it's divisible, you've got a different issue. We don't have that here. The question is, is it generically a fit? Edling says it doesn't. What am I missing? If you only look at the text of the statutes, nothing. If the case law is irrelevant to the analysis, then the statutes are the same. In what case? As my colleague pointed out, the one to which you make reference doesn't say what you said it does. No. The only argument is that as it stands, what we have from the State Supreme Court is that fear requires something more. It requires fear of bodily injury. That's what fear has been interpreted to mean. It is not in the case. I grant it. It's not in the case that involves threat to property. I'm not aware of any case existing since we're already statute went into place. But that's what we have, and it might be possible to think of something that would qualify under the other language of the statute, but it's not probable. That's the position. I think you're right that Duenas-Alvarez allows you to resort to the reasonable probability or whatever that standard is. But that's only when the statute's ambiguous, right? We look at it and we say, geez, it seems like it could cover that. Maybe it doesn't. We resort to the case law. But when you have a statute that's this clear, that's what I'm saying. I think you need more than just, well, we couldn't find any cases in which that kind of charge had been lodged, because it obviously is authorized. I would say right on its face there's a reasonable probability that a prosecutor, if that set of facts arose, it could certainly charge you with it. The fact that maybe they don't on a regular basis is neither here nor there, it seems to me. That's why I say I think that case that you gave us would need to go much further and say we know that the statute says that fear of harm to property is enough, but that really isn't, because we're going to give it this construction contrary to the statutory text. If we don't have that, it seems to me you're not going to be able to distinguish that. Since we're almost out of time, I want to ask you about the two-level enhancement under Section 3C1.2. Given what that says, which deals with very dangerous situations or, in quotes, creates a substantial risk of harm to the deputies, how can that fit what actually happened here? So the language from the provision in the guidelines is that during flight. This wasn't during flight. Well, it's to be construed broadly. It includes resisting arrest, and that's the definition that's in the guidelines. So during flight is to be construed broadly and includes preparation for flight, which would be him trying to break out of the car. Therefore, this adjustment also is applicable where the conduct occurs in the course of resisting arrest. So how did any of that come down to a substantial risk of death or serious bodily injury? He's in the backseat of a car that has a cage, and he's trying to kick his way out. And he's handcuffed. And he's handcuffed. Well, he had actually broken out of his restraints. He broke out of his restraints in the car. He broke out the window. And in the record on a— What I'm asking, though, is we understand what he allegedly did in the back of the car. Right. But how does that meet the requirements that it create a substantial risk of death or serious bodily injury? Because the officers who were transporting him were on the inside lane of the interstate and had to cross over multiple lanes of traffic on the interstate, find a spot to stop the car without being struck. The whole time he's fighting and trying to kick out the back window. Then they have to get out of the car on the interstate, open the door, re-restrain him, hold him at taser point until they get to the jail. So the district court found that that was enough, that being in that situation of having to navigate the busy traffic on the interstate with somebody out of control, the report that the driver filed— Well, going back to the original question, how is any of this, when he's already under arrest, how does that come down to being in the course of fleeing in preparation for flight or in the course of resisting arrest since he's already arrested? Well, he was trying to break out of the car. And the officer actually wrote, I feared he may successfully kick out the window and cause a serious vehicle collision or worse yet, attempt to flee out the back window while still driving down the busy freeway. And that's in the report. So, I mean, it's true that he was in the patrol car. He had been taken into custody, but he was still trying to escape from custody. And he was under arrest at the time. He was. But he was trying to flee from officers and he was trying to break out of the patrol car and in doing so created a substantial risk of harm to the officers. Other questions by my colleague? All right, thank you, Paul, for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Watford, Rayes